IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICIA HESTER,

        Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner, Social Security Administration,

        Defendant.

No. C 04-03511 TEH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on Monday, April 3, 2006, on Defendant's Motion for Summary Judgment. Having carefully considered the parties' written and oral arguments, and the entire record herein, and good cause appearing, the Court HEREBY ORDERS that Defendant's motion is granted for the reasons set forth below.

I. BACKGROUND

Plaintiff, Patricia Hester ("Hester") is an African-American female over 40 years of age. She began working for the Social Security Administration ("SSA") in 1968 as a GS-2 file clerk. She was promoted over the years, and in 1980 held the position of a GS-8 Service Representative. In July 2002, Hester applied for a promotion to the position of Social Insurance Specialist Claims Representative ("Claims Representative") which became available in her SSA branch office, located in the Western Addition neighborhood of San Francisco, California. Her direct supervisor, and the selecting official, Bob Andrews ("Andrews"), found that Hester was qualified for the position and recommended her for the promotion. He ultimately, however, selected another SSA employee who worked in the downtown San Francisco Civic Center office – a Willis Huie ("Huie"), who is an Asian- American male under the age of 40. Hester subsequently retired from service on April 1, 2005 as a GS-8, Step 10 Service Representative.

Hester asserts that Andrews, who is white, failed to select her for the promotion to the position of Claims Representative in 2002 due to race and age discrimination. She also asserts that after she complained about the denial of this promotion, the phone system at her branch office was altered such that calls to the office were redirected to her home phone causing her to receive calls at her home from angry SSA customers.

On August 23, 2004, Hester filed this action asserting that she was discriminated against on the basis of her race under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and her race and age under the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 *et seq.*[1] She also asserts claims for retaliation, intentional infliction of emotional distress, negligent supervision, and "breach of the implied and/or express contract of continued employment." Defendant now moves for summary judgment on all of Plaintiff's claims on the grounds that (1) Hester has insufficient evidence to proceed on her discrimination and retaliation claims, (2) Hester has failed to administratively exhaust her retaliation claim, and (3) her state law tort and contract claims fail as a matter of law.

## II. LEGAL STANDARD

Summary judgement is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgement as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); Fed. R. Civ. P. 56(c). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1976). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 2511 (citations omitted). In ruling on a summary judgement motion, a court must view all facts and draw all inferences in the

---

[1] Plaintiff's complaint fails to specify the statutory basis for her claim of age discrimination; the Court, however, has liberally construed the complaint to assert a claim of age discrimination under FEHA.

2

light most favorable to the nonmoving party. *Poller v. CBS, Inc*., 368 U.S. 464, 82 S..Ct. 486 (1962).

A party seeking summary judgement bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 108 S. Ct. 1028 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Where the moving party does not have this burden, it can prevail on a motion for summary judgement on an issue that her opponent will have the burden of proof for at trial by merely "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." *Id*.   If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. *Anderson,* 477 U.S. at 250; Fed. R. Civ. P. 56(e).

III. DISCUSSION

    A.  PROMOTION CLAIM BASED ON RACE AND AGE DISCRIMINATION

As noted above, Hester claims that she was denied promotion to the Claims Representative position in 2002 due to her race and age.  In order to prevail on these claims for disparate treatment, Hester must show that Defendant was motivated by discriminatory intent. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981).  It is not necessary, however, that Defendant was motivated solely by discriminatory intent. *Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296 (1979).

In order to proceed, Hester must first establish a *prima facie* case of discrimination.  This creates a presumption that the plaintiff's employer took the challenged action because of the plaintiff's race or age.  The burden then shifts to the defendant to show that it had a legitimate, non-discriminatory reason for not selecting the

plaintiff for the position at issue. *McDonnell Douglass v. Green*, 411 U.S. 792, 802-04 (1973).  If the defendant presents such evidence, the presumption falls away and the plaintiff must then carry her ultimate burden of persuasion by presenting direct or circumstantial evidence that the defendant's proffered legitimate reasons are unworthy of credence and are a pretext for intentional race or age discrimination. *Cornwell*, __ F.3d __, 2006 WL 473845 * 6-7 (9th Cir. 2006 ).[2]

The usual summary judgment standards discussed above apply.  Thus, "[i]n the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race." *Cornwell,* 2006 WL 473845 *7.[3]

As explained below, the Court finds that while Hester can establish a *prima facie* case of race and age discrimination, Defendant has come forward with legitimate, non-discriminatory reasons for its challenged action, and Hester has failed to respond with sufficient evidence to create a material issue of fact with respect to her ultimate burden of persuasion.

1. *Prima Facie Showing*

A plaintiff establishes a *prima facie* case of discrimination by showing that: (1) she belongs to a protected group, (2) she applied for and was qualified for a position, (3) she was rejected for the position, and (4) similarly situated employees outside of plaintiff's protected group were treated more favorably.  Here, Hester is an African-

---

[2] The same standards apply to Plaintiff's Title VII and FEHA claims. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998).

[3] In *Cornwell*, the Court questioned the continuing vitality of cases such as *Godwin,* 150 F.3d at 1222, which require that a Title VII plaintiff relying on circumstantial (rather than direct) evidence to come forward with "specific" and "substantial" evidence of pretext or discrimination in order to defeat a motion for summary judgment.  In light of *Cornwell*, this Court will not apply the more stringent *Godwin* test but instead shall apply the traditional summary judgment standards utilized in *Cornwell* and *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

4

1    American over 40 years of age.  It is also undisputed that she was qualified, but rejected,
2    for the position at issue.  Finally, the person selected, Mr. Huie, was another SSA
3    employee applicant outside of Plaintiff's protected group.  While Defendant argues that
4    Huie was not "similarly situated" to Plaintiff because he was more qualified for the
5    position, this argument is more properly directed to Defendant's burden to come forward
6    with non-discriminatory reasons for its challenged action.  Accordingly, the Court
7    concludes that Plaintiff has met her minimal burden of making a *prima facie* showing of
8    race and age discrimination.

2. *Employer's Non-Discriminatory Reasons for Challenged Action*

At the time of the promotion, Huie and Hester were both employed by the SSA at the GS-8 level doing similar work –  Huie at the SSA Downtown San Francisco Civic Center office, and Hester at the Western Addition Office.  Defendant contends that while both Hester and Huie were qualified for the promotion, Andrews selected Huie because of his stronger qualifications.  Reviewing the record, the Court is satisfied that Defendant has met its burden of producing evidence that this legitimate ground was the basis for Andrews' decision.

First, it is undisputed that Huie's supervisor at the Civic Center office told Andrews (the selecting official and Hester's direct supervisor) that Huie was "one of the top performers in the office" and that he was doing an "outstanding job" taking care of the "prisoner workload" in the office. Andrews Dep. at 44.  In contrast, Andrews (as Hester's direct supervisor in the Western Addition Office) was aware that Hester was the lowest performing service representative in her office, save for one employee who had a reduced workload because of disability.  At the SSA, productivity is objectively measured by computer-generated statistics that are based on employee computer entries for different functions. In 2000, Hester had 567.91 work units compared to 677.38  and 1478.36 units for the other comparable employees in her office.  In 2001, Hester had 872.4 units compared to 1127.27 and 3124.01 for the other employees.

5

Second, Huie's status as a "top performer" in his office indicated he was proficient in the computer program MSSICS utilized by Claim Representatives, and his application stated that he had undergone training on the MSSICS program. Hester did not have formal training on this program but had received an hour of training "here or there." *See* Coleman Decl., Exh. J, attached to Exh. A.

Third, Andrews was aware that an Independent Assessment Panel consisting of four members (which did not include Andrews and received no input from Andrews other than his formal recommendation of Hester for the position) gave Huie a higher score (89) than it gave to Hester (82). Finally, Huie's application indicated that he has a bachelor's degree while Hester does not, although she did take several college classes at night.

Hester emphasizes that she had far more seniority at the SSA than did Huie, having been employed by the SSA since 1968, and having worked as a Service Representative since 1980, compared to Huie's five-and-a-half years with the SSA. While Hester's lengthy tenure certainly qualified her for the promotion, longevity alone does not necessarily render one candidate better qualified than another.

Accordingly, and given all of the above, this Court finds that Defendant has met its burden of demonstrating a non-discriminatory basis for its selection of Huie over Hester.

3. *Pretext*

Once the defendant has set forth a legitimate basis for the challenged action, the burden shifts back to the plaintiff to demonstrate that this stated reason was a pretext for discrimination. Having carefully considered Hester's evidence on this point, the Court concludes that she has failed to come forth with any evidence from which a reasonable jury could find that the asserted grounds for Huie's selection were pretextual and that Hester's non-selection was motivated by discriminatory intent.

6

(a) *Race*

In her papers, Hester contends that the asserted basis for Huie's selection – better qualifications – is pretextual because Hester was in fact more qualified than Huie. At page four of her opposition memorandum she summarizes her argument into four primary points which this Court has condensed into three.

First, Hester argues that the rating system for the original Well-Qualified List was modified to lower the ratings scale to allow someone besides Huie to be eligible for the promotion, and that as a result of this modification Andrews had only two individuals from whom he could select for the promotion – Huie and Hester. Plaintiff's citation to the record does not support the contention that the ratings system was modified. Even if it did, however, the Court is at a loss to understand why these facts would support an inference that Hester was more qualified than Huie or that Huie was not, in fact, chosen based on his qualifications.

Second, Hester contends that Andrews did not given her any <u>written</u> warnings that she needed to improve. Even assuming this point is correct, it fails to address the relative qualifications of Hester and Huie.

Third, Hester argues that Andrews used "private" and subjective criteria which was not disclosed to the applicants. While it is certainly true that subjective criteria can be a conduit for discriminatory animus, a plaintiff must have some evidence from which it can be inferred that subjective criteria were in fact being misused in this way. The mere use of subjective criteria is not, alone, sufficient to indicate that the person selected is less qualified than the plaintiff. *See e.g. Pottinger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th 2003) (employer relied on subjective judgment that plaintiff could not help turn-around the company). Plaintiff's generalized point that subjective criteria can be a

7

conduit for discrimination fails to support a specific inference in this case that Huie was not, in fact, chosen based on his qualifications.[4]

In addition to these three points, Hester relies on two incidents involving Andrews to demonstrate that his failure to select plaintiff was infected by racial prejudice; neither, however, supports such an inference. First, Hester points to an instance in which she required certain wage loss information for a third-party claim form she was filing. Andrews gave her the leave statements that contained the information she needed but did not fill out the form itself. Hester asserts that this indicates a discriminatory animus toward her. However, when Hester was *first* asked during her deposition whether she believed that Andrews declined to fill out the form because she is African-American, Hester answered "Not so much – I just felt that it was a personality thing. . ." Hester Dep. at 140. Later, she asserted that he did not fill out the form because of her race, but she admits that she has no knowledge of him ever filling out the form for any white employee. Hester Dep. at 175.

The second incident concerned a conversation that Hester had with Andrews on October 3, 2002. On that day Hester received some calls at home from SSA customers who thought that they were calling the SSA Office. Hester went to Andrews to complain that SSA calls had somehow been forwarded to her home. She asserts that during this call he referred to himself as a "redneck." While she argues that this reference indicates a racial bias against African-Americans, no reasonable juror reading Hester's and Andrew's deposition testimony regarding this conversation could draw this conclusion.

First, Hester's testimony makes it clear that he made this reference in the context of assuring Hester that he wanted to get to the bottom of the problem:

---

[4] Nor has Hester come forth with any objective evidence that would undermine Andrew's assertion that he selected Huie because of his stronger productivity as a "top performer." On the contrary, the objective evidence only corroborates Andrews on this point. For example, in the year proceeding Huie's selection – 2001– Huie had 1395.025 work units compared to 872.4 work units for Hester.

8

A (Hester): I explained to [Andrews] that I had threatening calls, people calling my home thinking it was the Social Security Office.

Q: What did he say in response?

A: He couldn't understand it. He looked very puzzled. He was saying that he was going to look into the situation to see how did this happen. . . . .

Q: All right. Did Mr. Andrews say anything else . . . .

A: No. All he told me he was going to check into it to see what happened, how this situation come upon, and that was it . . . .

Q: How did [Andrews] act that led you to [the] belief [that Andrews is racist]? . . . .

A: The phone situation when the calls were coming to my home, he was saying that he's a redneck and he would, you know, see that this matter would be taken care of.

Q: Okay. So he said that within the context of stating that he was going to help you with the phone situation, correct?

A: Right. . . it's like he's a redneck, you know, he don't go for that and he was going to see, you, actually who– who actually had the phones forwarded to my home.

Q: He was saying he was a redneck within the context of saying he was going to help a black woman?

A: More or less. He doesn't go for that. He's a redneck. He doesn't go for whatever this phone situation, that he doesn't really play that.

*See* Hester Dep. at 135, 137, 141-42.

9

1  Andrews' deposition testimony is consistent with Hester's and confirms that he
2  used the term as a means of underscoring his intent to address the problem:

> I grew up working on the ranches, working with a bunch of, you know, good hard working individuals who considered themselves to be rednecks . . . In talking with Pat [Hester], I used the term redneck to say, Hey, I know you're upset about this phone line being transferred to your home. I'm upset about this phone line being transferred to your home. I"m gonna work as hard as I can to figure out who's responsible for transferring this phone line to your home and take the appropriate action.

Andrews Dep. at 101.

It is clear that Hester was personally offended by Andrews' use of the term "redneck," which can, in other contexts, have clear racial overtones. Given Hester's own testimony above, however, the Court is not persuaded that Andrews' use of the term in the October 3, 2002 conversation is sufficient to create an inference that his decision not to promote Hester was motivated in any part by racial animosity. Rather, it was more in the nature of an isolated comment which, viewed in context, is insufficient to create a material issue of fact. *See Nesbit for Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993).[5] Finally, while Hester testified at her deposition that she feels that Andrews discriminated against her because he is a racist, "subjective personal judgments do not raise a genuine issue of material fact." *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Understandably, Hester was deeply disappointed that she did not receive the Claims Representative promotion in 2002. At bottom, however, it appears that Hester believes that she was entitled to the promotion because of her long tenure as an SSA employee and as a Service Representative. The Court can certainly understand that Hester felt that she was strongly deserving of the promotion given her long years of service. The Court is not persuaded, however, that Hester's superior length of service is

---

[5] In her deposition (but not in her opposition memorandum) Hester also mentions that she thought that Andrews was racially biased because he had filled two other positions with non-African-Americans. Andrews, however, was not in fact the selecting official for these positions and he has only made a single selection – for the position at issue in this case.

10

1  sufficient to create an inference that she was discriminated against on the basis of race,
2  given the totality of the evidence relating to Huie and Hester's qualifications, and the
3  absence of any other colorable evidence of racial discrimination.[6]

5        (b) *Age*
6  Hester makes only one passing reference to her claim for age discrimination in her memorandum opposing Defendant's motion for summary judgment. Specifically, she states that Andrews "frequently asked Ms. Hester and others when they were going to retire." Pl.'s Opp. at 2 (citing Hester Dep. at 178). A review of Hester's deposition testimony, however, makes it clear that Andrews was only surveying Hester and other employees periodically after staff meetings about their retirement intentions for purposes of general personnel planning. *See* Hester Dep. at 178, 181-82. In fact, Hester admits that Andrews made these queries "because he was concerned about the staffing, employees being replaced" given that "60-70 percent of the staff [in the Western Addition office] was at retirement age. So it's like hopefully all these employees don't retire at one time." *Id.* at 181. Hester also admits that Andrews never said anything to encourage her to retire early. *Id.* at 182. Accordingly, Hester has also failed to raise a triable issue of fact with respect to her claim of age discrimination.

19 Given the above, the Court concludes that Defendant is entitled to a summary judgment on Hester's claims for race and age discrimination.

22     B. <u>RETALIATION CLAIM</u>
23 Andrews informed Hester that she was denied the promotion on September 26, 2002. In her deposition testimony, Hester asserts that in that meeting she complained to

---

[6] At oral argument, Hester argued that her claim that she was retaliated against for complaining that her non-selection was discriminatory should also be considered as evidence that the non-selection itself was discriminatory. As discussed below, however, the Court finds that Hester has failed to create a triable dispute of fact as to her retaliation claim. As such, the Court is not persuaded that it supports an inference of discrimination in her non-selection.

11

Andrews that she had not been selected for the position because of race and age. About a week later, on October 3, 2002, Hester received phone calls at home that had been forwarded from an SSA number. Hester asserts that the calls were redirected by "SSA management" in retaliation for her complaint of discrimination. *See* Pl.'s Opp. at 4.

Defendant is also entitled to a summary judgment on this claim. First, Hester did not exhaust her administrative remedies with respect to this claim because she did not assert a claim of retaliation in her EEO Counseling session or in her EEO complaint. *See generally, Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976); *Greenlaw v. Garrett*, 59 F.3d 994 (9th Cir. 1995). Plaintiff argues that she exhausted her administrative remedies because the Administrative Law Judge ("ALJ") addressed her retaliation claim. What the ALJ ultimately ruled, however, was that Hester's non-selection for the promotion was "the **only** accepted issue before [her] for adjudication." Fasano Decl., Exh. D at 2. (emphasis added).

Second, to prevail on a claim for retaliation, a plaintiff must prove *inter alia* that the adverse action was "causally related to the plaintiff's exercise of protected rights." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (citation omitted). Here, Hester has presented no evidence whatsoever – only pure speculation – that "SSA management" caused the phone calls to be forwarded to Hester's home. Hester concedes that the Inspector General's Office conducted an investigation into the matter but could not determine how the calls were forwarded. Nor does she know who forwarded the calls. Even assuming *arguendo* that Hester's claim was not procedurally barred, her purely speculative assertion that Andrews or some other unidentified person in "SSA Management" forwarded the calls is not sufficient to create a triable issue of fact and defeat Defendant's motion for summary judgment. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).

12

### C. TORT CLAIMS

Defendant is also entitled to a summary judgment on Plaintiff's tort claims for negligent supervision and infliction of emotional distress because Plaintiff did not comply with the jurisdictional prerequisite of submitting an administrative tort claim to the SSA before filing suit. 28 U.S.C. § 2675; *McNeil v. United States*, 508 U.S. 106 (1993); *Brewer v. U.S.*, 864 F.Supp. 741, 744 (N.D. Ill. 1994) (claim must be presented to agency, reviewed, and denied before filing suit); Carlo Decl., ¶ 1-3 (affidavit from employee responsible for processing of tort claims filed against SSA attesting that search of records did not reveal any claim filed by the Plaintiff).

Hester argues that a plaintiff is not required to use the word "tort" in her claim but must just provide sufficient information to enable the government to investigate the claim. Here, however, Plaintiff simply never filed any claim for damages with the agency whatsoever. Assertions made by Plaintiff in the context of her EEO proceedings or verbal complaints to her supervisor can not substitute for compliance with the Federal Tort Claims Act.

### D. CONTRACT CLAIM

Plaintiff also asserts a claim for "breach of the implied and/or express contract of continued employment." As Defendant points out, federal employment does not arise out of a personal contract of employment but rather by appointment. *Riplinger v. United States*, 695 F.2d 1163, 1164 (9th Cir. 1983). Plaintiff does not dispute this point in her opposition. As there is no legal basis for a contract claim, Defendant is entitled to a summary judgment on this claim as well.

Case 3:04-cv-03511-TEH   Document 30   Filed 04/17/06   Page 14 of 14

## IV. CONCLUSION

For all of the reasons set forth above, and good cause appearing, it is HEREBY ORDERED that Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Dated: April 17, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE